**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


Timmie G. Fair

    v.                                  Case No. 14-cv-83-PB

Patrick Keon and Maria McKenna


## REPORT AND RECOMMENDATION


Timmie Fair, appearing pro se, is currently being incarcerated by the New Hampshire Department of Corrections ("DOC") at the New Hampshire State Prison ("NHSP").  Under the aegis of 42 U.S.C. § 1983, Fair asserts that Patrick Keon and Maria McKenna, two nurses at the NHSP, denied him adequate medical care in violation of the Eighth Amendment to the United States Constitution.  Before this magistrate judge for a report and recommendation is defendants' motion for summary judgment, which is unopposed.  For the reasons that follow, defendants' motion for summary judgment should be granted.


## Summary Judgment Standard

"Summary judgment is appropriate when the record shows that 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  Walker v.

President & Fellows of Harvard Coll., 840 F.3d 57, 61 (1st Cir. 2016) (quoting Farmers Ins. Exch. v. RNK, Inc., 632 F.3d 777, 782 (1st Cir. 2011); citing Fed. R. Civ. P. 56(a)).  When a court considers a motion for summary judgment, "[t]he evidence . . . must be viewed in the light most favorable to the nonmoving party . . . and all reasonable inferences must be taken in that party's favor."  Harris v. Scarcelli (In re Oak Knoll Assocs., L.P.), 835 F.3d 24, 29 (1st Cir. 2016) (citing Desmond v. Varrasso (In re Varrasso), 37 F.3d 760, 763 (1st Cir. 1994)).  To defeat summary judgment, "[t]he non-moving party . . . must 'produc[e] specific facts sufficient to deflect the swing of the summary judgment scythe."  Xiaoyan Tang v. Citizens Bank. N.A., 821 F.3d 206, 215 (1st Cir. 2016) (quoting Mulvihill v. Top-Flite Golf Co., 335 F.3d 15, 19 (1st Cir. 2003)).

## Background

Defendants' memorandum of law in support of their motion for summary judgment incorporates the "short and concise statement of material facts, supported by appropriate record citations" that is required by Local Rule 56.1(a).  Because plaintiff has filed no objection to defendants' motion, "[a]ll properly supported material facts set forth in [defendants']

factual statement [are] deemed admitted." LR 56.1(b). That factual statement, in turn, is the source of the facts recited in this section.

Fair was arrested on a parole violation on December 12, 2013, and was booked into the NHSP. At the time of his arrest, he had an unhealed gash on his right hand that had resulted from an incident that took place about three weeks before his arrest. After the incident, but before his arrest, Fair received treatment for his hand injury at two different hospitals.

The day after he was booked into the NHSP, Fair punched something and was taken to the emergency room at Catholic Medical Center ("CMC"). There, he was diagnosed with a "healing, old hand injury with punctate retained foreign bodies."[1] Defs.' Mem. of Law, Ex. B (doc. no. 56-3 at 6). Fair was discharged from CMC with instructions to follow up with a hand specialist at Dartmouth-Hitchcock Medical Center ("DHMC"). His discharge instructions included the following: "Tylenol, Advil if needed for pains. . . . Use splint for comfort." Id. at 12.

On December 31, Fair was seen by a physician's assistant

---

[1] By all accounts, those "punctate retained foreign bodies" were pieces of a porcelain or glass bowl that Fair had punched. See id. at 3, 4.

("PA") at DHMC.  The PA's objective findings include this: "He does have a gaping wound that does have some slight serious drainage from it at this point.  There is no obvious purulence present today."[2]  Defs.' Mem. of Law, Ex. C (doc. no. 56-4 at 3).  Based upon his examination, the PA made the following assessment:

> Mr. Fair at this point does appear to have sustained a laceration on the dorsal aspect of his left hand[3] overlaying the fifth MCP joint.[4]  This appears to be a chronic injury at this point, which appears to be anywhere in the vicinity of 8 to 12 weeks in duration. The patient has no obvious infection at this point.

Id.  The PA concluded with a plan that includes the following: "[I]t is recommended [that] the patient has hydrogen peroxide soaks daily for 1 week.  . . .  Patient will also be splinted in

---

[2] Purulence is "[t]he condition of containing or forming pus."  Stedman's Medical Dictionary 1607 (28th ed. 2006).

[3] This medical record, like a consultation note prepared by the DOC, see doc. no. 56-3 at 2, identifies Fair's left hand as the locus of his injury, while plaintiff's complaint, see doc. no. 1 at 5, and the CMC medical records, see, e.g., doc. no. 56-3 at 3, refer to his right hand.  The court is at a loss to explain this discrepancy, but it does not appear to be material to any issue the court must decide.

[4] MCP is an "[a]bbreviation for metacarpophalangeal." Stedman's, supra note 2, at 1164.  Metacarpophalangeal means "[r]elating to the metacarpus and the phalanges, denoting the articulation between them."  Id. at 1193.  The metacarpus, in turn, are "[t]he five bones of the hand between the carpus and the phalanges."  Id.

the interim for his hand."  Id.

After Fair returned to the NHSP from his visit to DHMC, he was housed in the NHSP's Secure Housing Unit ("SHU").  For inmates housed in SHU, sick call is conducted once a day.  At the appointed time, a nurse enters each tier and announces the start of sick call.  An inmate wishing to be seen by the nurse must stand at the door of his cell.  There, he is evaluated and, if necessary, treated by the nurse doing the sick call.

Plaintiff's claim is based upon the manner in which two NHSP nurses treated him during sick calls between December 31, 2013, and January 9, 2014.  On eight of those ten days, nurse Patrick Keon conducted sick call on Fair's tier.  When Fair responded to sick call by presenting himself at the door of his cell, nurse Keon examined his wound and provided him with Bacitracin and band aids.  On the other two days, nurse Maria McKenna conducted sick call on Fair's tier.  When she saw Fair, she took him out of his cell and soaked his injured hand.  On January 9, Fair reopened his wound by repeatedly punching a concrete wall.

This action followed.  In it, plaintiff brings a single claim:

> NHSP nurses, specifically Patrick Keon and Maria
> McKenna, violated plaintiff Timmie Fair's Eighth

5

> Amendment right to adequate medical care in that, with
> deliberate indifference to a substantial risk of
> serious harm to Fair, they knew of Fair's hand injury
> and/or the December 31, 2013, recommendations of a
> Dartmouth Hitchcock Medical Center ("DHMC") physician
> (i.e., that Fair soak his injured right hand in
> antiseptic solution, keep it clean, and wear a
> removable cast), but they did not implement those
> recommendations or otherwise treat Fair's hand injury
> before January 9, 2014.

R. & R. (doc. no. 53 at 1).  Given the undisputed evidence of
the treatment that Fair received at the NHSP, which includes his
own deposition testimony that he had a splint during the time
period at issue, his claim is reduced to an assertion that
defendants violated his rights under the Eighth Amendment by
giving him fresh bandages and Bacitracin rather than soaking his
hand, as recommended by the PA at DHMC, during an unspecified
number of sick calls between December 31, 2013, and January 9,
2014.

## Discussion

Defendants argue that they are entitled to summary judgment
because: (1) expert testimony is necessary for plaintiff to
prove his claim, but he has not disclosed expert witness; and
(2) plaintiff cannot establish that he was provided with
constitutionally deficient medical care.  Defendants' first
argument is persuasive and dispositive.

The Eighth Amendment to the United States Constitution guarantees that prisoners shall not be subjected to cruel and unusual punishments.  "Prison officials . . . violate the Eighth and Fourteenth Amendments' prohibition against 'cruel and unusual' punishments when they exhibit 'deliberate indifference' to a detainee's serious medical needs."  Perry v. Roy, 782 F.3d 73, 78 (1st Cir. 2015) (citing Feeney v. Corr. Med. Servs., 464 F.3d 158, 163 (1st Cir. 2006); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976)).  As Judge McAuliffe has explained,

> to violate the Eighth Amendment, the "care provided must have been so inadequate as to shock the conscience," Feeney v. Corr. Med. Servs., 464 F.3d 158, 162 (1st Cir. 2006) (citations and internal punctuation omitted), or it must have "constitute[d] an unnecessary and wanton infliction of pain or [been] repugnant to the conscience of mankind," Estelle, 429 U.S. at 105-06 (citations and internal punctuation omitted).

Brown v. Englander, No. 10-cv-257-SM, 2012 WL 1986518, at *3 (D.N.H. June 1, 2012).

In Brown, the plaintiff claimed that the defendants violated his rights under the Eighth Amendment by refusing him back surgery but treating him, instead, with "prescription and nonprescription medication designed to alleviate pain; steroid injections; [and] consultations with surgeons and pain-management specialists."  2012 WL 1986518, at *3.  Judge

McAuliffe granted summary judgment to the defendants, on grounds that the plaintiff had not disclosed a medical expert.  He began by quoting from a previous decision in a similar case:

> This court lacks the medical training and expertise necessary to determine, in the absence of expert opinion evidence, whether the medical judgment exercised by the defendant physicians fell below an acceptable standard of professional care, much less that the medical care provided to [plaintiff] was so substandard as to implicate the Eighth Amendment. Stated slightly differently, the medical care [plaintiff] did receive was not so obviously and shockingly deficient that the court can conclude, without the benefit of supporting expert medical testimony, that [plaintiff] is likely to prevail on his Eighth Amendment claim.

Id. (quoting Boudreau v. Englander, No. 09-CV-247-SM, 2010 WL 2108219, at *3 (D.N.H. May 24, 2010).  Applying the reasoning from Boudreau to Brown, Judge McAuliffe concluded that the care the defendants provided to the plaintiff in the case before him "was not so obviously outrageous or malicious that a lay trier-of-fact could reasonably conclude that it violated the Eighth Amendment's proscription against cruel and unusual punishment." 2012 WL 1986518, at *3.  For want of a medical expert, he granted summary judgment to the defendants.

This case falls comfortably within the ambit of Brown. This is not a case in which a prisoner was denied treatment entirely, which might support an Eighth Amendment claim.

8

Rather, it is undisputed that on two occasions, nurse McKenna soaked Fair's hand, which is precisely the treatment he faults defendants for not providing him, and it is also undisputed that every other time he presented himself for treatment at sick call during the time period at issue, nurse Keon examined his hand and on multiple occasions gave him a fresh bandage and ointment. As in Brown, without expert testimony, no reasonable lay fact-finder could conclude that the treatment Fair received was so inadequate that it violated the Eighth Amendment.

The deadline for disclosing an expert in this case was January 15, 2016.  See Order (doc. no. 41).  Plaintiff has not disclosed a medical expert.  Accordingly, defendants are entitled to judgment as a matter of law.  See Brown, 2012 WL 1986518, at *4; see also Donlon v. Masewic, No. 10-cv-559-PB, 2012 WL 2119271, at *2-3 (D.N.H. May 21, 2012) (recommending grant of summary judgment to defendant where prisoner with diabetes complained about form of medication he received, timing, frequency, and extent of blood-sugar testing, and amount of treatment he received, but failed to disclose medical expert), R. & R. adopted by 2012 WL 2119264 (June 11, 2012); Roberts v. Wentworth-Douglass Hosp., No. 09-cv-34-SM, 2011 WL 1230334, at *4 (D.N.H. Mar. 29, 2011) (granting summary judgment

to defendants where prisoner complained about getting surgery he felt was unnecessary, but failed to disclose medical expert); Boudreau, 2010 WL 2108219, at *4 (granting summary judgment to defendants where prisoner complained about tapering of morphine, but failed to disclose medical expert).

At most, Fair has identified a disagreement between himself and health-care providers at the NHSP concerning the treatment he should have been given.  But that is not sufficient to support an Eighth Amendment claim.  See Kosilek v. Spencer, 774 F.3d 63, 83 (1st Cir. 2014) (citing Watson v. Caton, 984 F.2d 537, 540 (1st Cir. 1993)).  To be sure, it is undisputed the treatment nurse Keon provided to Fair was not what was recommended in the DHMC treatment/discharge note.  The Eighth Amendment, however, requires adequate treatment, not ideal treatment, see Kosilek, 774 F.3d at 82, so defendants' failure to follow the DHMC treatment plan is not, as plaintiff seems to believe, a per se constitutional violation.

## Conclusion

For the reasons described above, defendants' motion for summary judgment, document no. 56, should be granted, and the clerk of the court should be directed to enter judgment in favor

of defendants and close this case.

Any objection to this report and recommendation must be filed within 14 days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  Failure to file an objection within the specified time waives the right to appeal the district court's order.  See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by objections to magistrate judge's report are subject to review by district court; issues not preserved by such objection are precluded on appeal).


_____
Andrea K. Johnstone
United States Magistrate Judge


December 2, 2016

cc:  Timmie G. Fair, pro se
     Stephen LaBonte, Esq.
     Francis Charles Fredericks, Esq.